UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
─────────────────────────────────
                                    :
AD GLOBAL FX FUND, LLC, AD          :
EQUITY INVESTMENT FUND LLC,         :
and AD GLOBAL 2001 FUND LLC,        :
                                    :
                                    :
              Plaintiffs,           :
                                    :      Before: Richard K. Eaton, Judge*
          v.                        :
                                    :      Consol. 05 Civ. 00223 (RKE)
UNITED STATES,                      :
                                    :
                                    :
              Defendant.            :
─────────────────────────────────:
```

**<u>OPINION and ORDER</u>**

This is a consolidated action brought by three related limited liability companies, AD

Global FX Fund, LLC ("AD FX"), AD Equity Investment Fund LLC ("AD Equity"), and AD

Global 2001 Fund LLC ("AD 2001"), formed by Alpha Consultants Inc. ("Alpha") and The

Diversified Group Inc. ("Diversified") (the source of the "AD" in the name of each fund)

(collectively, "plaintiffs"), challenging the Internal Revenue Service's ("IRS" or "defendant")

Notice of Final Partnership Administrative Adjustments ("FPAA") issued to each plaintiff.  In

each company's respective FPAA, the IRS determined that the entities were formed as tax

shelters intended to create artificial tax losses to offset the individual fund's corporate partners'

unrelated taxable gains and, thus, the entities were to be disregarded as shams for tax purposes.

These consolidated actions were commenced by plaintiffs pursuant to 26 U.S.C. § 6226(a)

---

\* Judge Richard K. Eaton, of the United States Court of International Trade, sitting
by designation.

(2000), which allows a partnership to seek a readjustment of determinations made in a FPAA. Plaintiffs have moved for partial summary judgment. For the reasons stated below, the motion is granted in part.

BACKGROUND[1]

This case involves the alleged organization of limited liability companies as tax shelters in order to produce large, artificial tax losses for the companies' corporate partners.[2]  In each case, the individual partners took the following steps to create a putative loss for tax purposes. First, the partner simultaneously purchased from and sold to Lehman Brothers Commercial Corporation ("Lehman") paired options on foreign currency, giving the partner the right to purchase or "call" the currency (the "long option") and the obligation to sell or "put" the currency (the "short option") at some point in the future for a pre-determined price in U.S. Dollars. Pls.' Local Rule 56.1 Statement ¶¶ 3, 19, 32 (ECF Dkt. No. 50) ("Pls.' 56.1").  In each case, the strike price[3] for both the long and short options was nearly identical, such that the partner would neither gain nor lose any appreciable amount upon the exercising of the pair of options. *See* Pls.' 56.1 ¶¶ 3, 19, 32.  In all cases, the purchase price of the long option was higher than the purchase price of the short option. Pls.' 56.1 ¶¶ 3, 19, 32.  As a result, the only

---

[1]     The court has taken the facts described below from the parties' Rule 56.1 statements. Where only one party's Rule 56.1 statement is cited, the opposing party does not dispute that fact, or the opposing has offered no admissible evidence to controvert a statement which is otherwise supported by evidence on the record. Where no Rule 56.1 statement dealt directly with a fact, a citation to an uncontroverted portion of the record is provided.

[2]     Limited liability companies are treated as partnerships for tax purposes. *See* 26 C.F.R. §  301.7701-2(c)(1) (1999).

[3]     A "strike price" is the "price for which a security will be bought or sold under an option contract if the option is exercised."  BLACK'S LAW DICTIONARY 1227 (8th ed. 2004).

2

amount actually paid by each partner to Lehman was equal to the difference in the purchase price of the options.  Pls.' 56.1 ¶¶ 3, 19, 32.

For example, Moxon Corp. ("Moxon"), a partner in AD FX, simultaneously purchased a long option on the Canadian Dollar for $40 million USD, and sold a short option on the Canadian Dollar to Lehman for $39.8 million USD.  Pls.' 56.1 ¶ 3.  "The net result was that Moxon paid Lehman $200,000."  Pls.' 56.1 ¶ 3.

Second, each partner contributed the option pairs in exchange for partnership interests in their respective limited liability companies.  Pls.' 56.1 ¶¶ 4, 20, 33.  The percentage interest received by the contributing partner was determined by the partnership based on the value of the long options, without consideration of the partner's obligation under the short option.  Pls.' 56.1 ¶¶ 4, 20, 33.  Presumably, this was because the value of the short option was sufficiently speculative that it might be ignored when computing basis.  Accordingly, each partner's capital account reflected an initial contribution of property valued at the gross purchase price of the long option, without netting the offsetting liability incurred under the paired short option.  Thus, each partner's capital account valued the contributed long option at an amount far in excess of the amount actually expended to acquire that option.  For example, Moxon's capital account in AD FX reflected an initial contribution of approximately $40 million, the purchase price of the long option.  This was notwithstanding that Moxon only paid approximately $200,000 to acquire the option because of the contemporaneous sale of the short option to Lehman for approximately $39.8 million.  Pls.' 56.1 ¶¶ 3, 4.

Third, the partnership liquidated its assets and each partner withdrew from the partnership.  Pls.' 56.1 ¶¶ 9, 23, 36.  Upon withdrawal, each partner received the value of its share of the partnership's assets, which was a relatively small amount, especially when compared

to the value of the partner's initial contribution, as reflected in the partnership's capital account. *See* Pls.' 56.1 ¶¶ 9, 12, 23, 25, 36, 39.

Finally, on its federal income tax return, each plaintiff partnership took the position that it had received the options from its partners as contributions to a partnership within the meaning of 26 U.S.C. § 721, with a carryover basis determined under 26 U.S.C. § 723. Pls.' 56.1 ¶¶ 10, 24, 37. In each case, the partnership claimed that each partner's initial contribution was equal to the value of the long option, without considering the partnership's assumption of the partner's offsetting liability under the short option.[4] Pls.' 56.1 ¶¶ 10, 24, 37. Likewise, upon withdrawal, each partner claimed an outside basis in its partnership interest equal to the gross price of the long option, without a setoff for the partnership's assumption of the obligations under the short option. Pls.' 56.1 ¶¶ 12, 25, 39.

For example, upon withdrawal, Moxon received approximately $60,000 as the value of its investment in AD FX. When subtracted from the $40 million value of the long option contributed as its initial capital investment in AD FX, this resulted in a claimed tax loss in excess of $39 million. Pls.' 56.1 ¶ 12. In other words, Moxon's claimed basis in its partnership interest was approximately $40 million, and its claimed partnership interest upon withdrawal was approximately $60,000. Moxon then claimed a tax loss equal to the difference in its alleged basis ($40 million) and its alleged share of assets on liquidation ($60,000). Pls.' 56.1 ¶ 12.

For each partnership, the IRS issued an FPAA challenging these reported losses.[5] Pls.' 56.1 ¶¶ 13, 26, 40. According to the government, these transactions were merely "son of the

---

[4]    A partner's contribution to the partnership is generally equal to the value of any property contributed to the partnership by the partner, less the value of any liabilities of the partner assumed by the partnership. *See* 26 U.S.C. §§ 752(a)–(b).

[5]    An individual FPAA was issued for each of the putative partnerships, and the respective FPAAs make substantially similar adjustments for virtually identical reasons. The

BOSS"[6] tax shelters orchestrated to create losses to offset taxable gains.  United States of America's Mem. of Law in Opp'n to Pls.' Mot. For Partial Summ. J. 4 (ECF Dkt. No. 38) ("Def.'s Br.").  The IRS determined that these partnerships were mere shams intended to create tax losses, as the transactions at issue had no economic substance.  Accordingly, the IRS determined that the partnership form and the claimed losses resulting from the foregoing transaction would be disregarded in determining the tax liability of the partners.

The FPAA issued for AD 2001 ("AD 2001 FPAA"), which was virtually identical in substance to the FPAAs for AD FX and AD Equity, made the following findings:

1. It is determined that neither AD Global 2001 LLC Fund nor its purported partners have established the existence of AD Global 2001 Fund LLC as a partnership as a matter of fact.

2. Even if AD Global 2001 Fund LLC existed as a partnership, the purported partnership was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interest of its purported partners.  The formation of AD Global 2001 Fund LLC, the acquisition of any interest in the purported partnership by the purported partner, the purchase of offsetting options, the transfer of offsetting options to a partnership in return for a partnership interest[,] the purchase of assets by the partnership, and the distribution of those assets to the purported partners in complete liquidation of the partnership interests, and the subsequent sale of those assets to generate a loss, all within a period of less than 5 months, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes.

---

FPAA for AD 2001 for the tax year ending December 31, 2001 was issued on April 11, 2005.  The FPAA for AD FX for the 1999 tax year was issued on October 15, 2004.  On December 14, 2004, the IRS issued a FPAA for AD Equity for the 2000 tax year.

    [6]     "A Son-of-BOSS transaction is a type of tax shelter that creates artificial tax losses.  The name refers to the [idea] that the tax shelter 'is a variation of a slightly older alleged tax shelter known as BOSS, an acronym for 'bond and options sales strategy.'"  *Diebold Foundation, Inc. v. Comm'r*, 736 F.3d 172, 181 n.5 (2d Cir. 2013) (quoting *Kligfeld Holdings v. Comm'r*, 128 T.C. 192, 194 (2007)).  Son-of-BOSS shelters function by "the transfer of assets encumbered by significant liabilities to a partnership, with the goal of increasing basis in that partnership."  *Kligfeld*, 128 T.C. at 194.  Because the exact value of the liabilities may not be fixed when the assets are transferred to the partnership "[t]his may let the partnership treat the liabilities as uncertain, which may let the partnership ignore them in computing basis."  *Id.*  In that situation, "the partners will have a basis in the partnership so great as to provide for large— but not out-of-pocket—losses on their individual tax returns."  *Id.*

Accordingly, the partnership and the transaction described above shall be disregarded in full and any purported losses resulting from these transactions are not allowable as deductions for federal income tax purposes.

3. It is determined that AD Global 2001 Fund LLC was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and availed of in connection with a transaction or transactions . . . a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code [governing partnerships]. . . .

4. It is determined that the obligations under the short positions (written call options) transferred to AD Global 2001 Fund LLC constitute liabilities for purposes of Treasury Regulation §1.752-6T, the assumption of which by AD Global 2001 Fund LLC shall reduce the purported partners' bases in AD Global 2001 Fund LLC in the amounts of $14,900,000 for JSB Montana Inc.[7] and Subsidiaries, but not below the fair market value of the purported partnership interest.

5. It is determined that neither AD Global 2001 Fund LLC nor its purported partners entered into the option(s) or purchased the foreign currency or stock with a profit motive for purposes of § 165(c).

6. It is determined that, even if the foreign currency option(s) are treated as having been contributed to AD Global 2001 Fund LLC, the amount treated as contributed by the partners under section 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call option(s) to the same counter-party.  Thus, the basis of the contributed options is reduced, both in the hands of the contributing partners and AD Global 2001 Fund LLC.  Consequently, any corresponding claimed increases in the outside basis in AD Global 2001 Fund LLC resulting from the contributions of the foreign currency option(s) are disallowed.

DISCUSSION

Plaintiffs have moved for partial summary judgment[8] on the following grounds: (1) the

FPAAs improperly address "non-partnership items," and the court lacks subject matter

---

[7]     JSB Montana Inc. was a partner in AD Global 2001 Fund LLC.

[8]     Plaintiffs acknowledge that even if they are granted summary judgment on all of the grounds in their motion, triable issues will remain concerning whether the transactions at issue can be considered for tax purposes.

6

jurisdiction to consider those determinations; (2) each plaintiff was a partnership for tax purposes as a matter of law; (3) 26 U.S.C. § 165(c)(2), which only allows the deduction of losses from transactions that are entered into for profit, does not apply to partnerships as a matter of law; and (4) the short options are not "liabilities" for tax purposes as a matter of law.

A.  Whether Each of the Plaintiff Partnerships Was a Partnership for Tax Purposes as a Matter of Law

The FPAAs determined that the plaintiff partnerships should be disregarded because they were "formed and availed of solely for purposes of tax avoidance," and because their "formation . . . had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitute[d] an economic sham for federal income tax purposes."  AD 2001 FPAA.  Plaintiffs argue, however, that they are partnerships for tax purposes as a matter of law because they met the formal requirements of a partnership under the tax code.  "Partnership" is defined by the Tax Code as any "unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a corporation or a trust or estate."  26 U.S.C. § 761(a).  Limited liability companies, like plaintiffs, with more than one member are classified as partnerships for tax purposes.  26 C.F.R. § 301.7701-2(c)(i) (1999).

Plaintiff insists that the standard for determining whether an entity constitutes a partnership for tax purposes is the "totality-of-the-circumstances" test set forth by the Supreme Court in *Commissioner v. Culbertson*.  In *Culbertson*, the Court found that a partnership exists when,

> considering all the facts—the agreement, the conduct of the parties in the execution of its provisions, their statements, the testimony of a disinterested person, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts

throwing light on their true intent—the parties *in good faith and acting with a business purpose* intended to join together in the present conduct of the enterprise.

*Comm'r v. Culbertson*, 337 U.S. 733, 742 (1949) (emphasis added).  Plaintiffs argue that this test is "easily met in this case," asserting that their principal purpose being to evade taxes is irrelevant.  In other words, plaintiffs claim that because they were partnerships in form, they are partnerships for tax purposes as a matter of law, notwithstanding their tax evasion motives, because "a purpose to reduce taxes has not, to date, been considered relevant in determining whether a partnership is bona fide."[9]  Pls.' Mem. of Law in Supp. of Pls.' Mot. for Partial Summ. J. 13 (ECF Dkt. No. 32) (citation omitted) ("Pls.' Br.").

Plaintiffs' argument cannot be accepted.  Courts "'look to the objective economic realities of a transaction rather than to the particular form the parties have employed.'"  *Altria Grp. Inc. v. United States*, 658 F.3d 276, 284 (2d Cir. 2011) (quoting *Frank Lyon Co. v. United States*, 435 U.S. 561, 573 (1978)).  "'To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress.'"  *Id.* (quoting *Comm'r v. Ct. Holding Co.*, 324 U.S. 331, 334 (1945)).  Under various form over substance principles, including the sham entity

---

[9]       Plaintiff also suggests that the IRS erred in relying on Treasury Regulation § 1.701-2 as authority for disregarding the partnerships because they were formed merely for tax avoidance purposes.  For plaintiff, to the extent that this regulation permits the IRS to disregard a partnership that meets the formal requirements of the subchapter K of the Internal Revenue Code, the regulation is invalid under *Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).  The court finds it unnecessary to consider whether deference is owed to the interpretation found in Treasury Regulation § 1.701-2 at this time, as defendant has advanced other theories under which the plaintiff entities could be disregarded if they were created for tax avoidance purposes, such as economic substance, step transaction, sham entity, and substance over form.  Were defendant to prevail on any of these theories, there would be no need to address the validity of the regulation.  *See Jade Trading, LLC v. United States*, 60 Fed. Cl. 558, 562 (2004) (finding plaintiff's challenge to the validity of Treasury Regulation § 1.701-2 unripe for summary judgment).

and step transaction doctrines, courts routinely refuse to recognize a partnership or other organization for tax purposes "if it is fictitious or if it has no business purpose . . . other than the creation of tax deductions." *Ferguson v. Comm'r*, 29 F.3d 98, 101 (2d Cir. 1994) (citation and internal quotation marks omitted).  Thus, where the validity of a partnership for tax purposes is called into question, in addition to meeting the formal requirements set forth in *Culbertson*, the partnership must also pass muster under sham entity and related doctrines.

In determining whether a putative partnership constitutes a sham entity, the "basic inquiry [is] . . . whether, all facts considered, the parties intended to join together as partners to conduct business activity for a purpose other than tax avoidance," *ASA Investerings, P'ship v. Comm'r*, 201 F.3d 505, 513 (D.C. Cir. 2000), and "'the absence of a nontax business purpose is fatal' to the validity of a partnership," *Andantech LLC v. Comm'r*, 331 F.3d 972, 978 (D.C. Cir. 2003) (quoting *ASA Investerings*, 201 F.3d at 512–13).  Indeed, in *Culbertson* itself, the Supreme Court observed that not all partnerships meeting the formal requirements are partnerships for tax purposes.  The mutual, "good faith" intention of the partners "to conduct a business" is an essential element of partnership status for income tax purposes under *Culbertson*.  *Culbertson*, 337 U.S. at 744–45.  Because there are genuine factual disputes concerning whether the plaintiff entities were shams created for the primary purpose of tax evasion, the court cannot find, on this record, that these entities were bona fide partnerships for tax purposes as a matter of law.  Thus, plaintiff's motion is denied.

B.   Whether the FPAAs Improperly Address Matters Which Are Not Partnership Items

Plaintiffs argue that because two items are not "partnership items," those items were improperly adjusted in the FPAAs and that the court lacks jurisdiction to review the adjustments.

First, plaintiffs contend that each partner's outside basis[10] in its partnership interest is not a partnership item.  Second, plaintiffs contend that whether the value of the long options should be diminished by the value of the offsetting short options, i.e., whether the options should be netted, is not a partnership item.

1.   Legal Framework

Pursuant to the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 26 U.S.C. §§ 6221 *et seq.*, although partners individually pay taxes, the tax treatment of "any partnership item" is determined at the partnership level.  26 U.S.C. § 6221.  TEFRA was enacted to "establish a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level," thus avoiding the inconsistent treatment that was prevalent when the IRS was required to audit each partner individually. *Callaway v. Comm'r*, 231 F.3d 106, 108 (2d Cir. 2000) (citation omitted).  "Individual taxpayers still pay the relevant taxes, but the determination as to the amount of tax attributable to partnership items [are now] made at the partnership level."  *Madison Recycling Assocs. v. Comm'r*, 295 F.3d 280, 281 n.1 (2d Cir. 2002) (citation omitted).

Under TEFRA, the partnership, usually through its tax matters partner, files its tax positions with the IRS.  If the IRS disagrees with the partnership's positions, it issues a FPAA making the adjustments it deems appropriate.  The partnership may challenge any determinations in the FPAA by commencing an action in the U.S. Tax Court, the Court of Federal Claims, or a U.S. District Court.  26 U.S.C. § 6226(a).  The determination in that proceeding is binding on all

---

[10]        "An 'outside basis' is the value assigned to a partner's investment in his or her partnership interest." *Petaluma FX Partners, LLC v. Comm'r*, 591 F.3d 649, 654 (D.C. Cir. 2010).

partners.  *See Callaway*, 231 F.3d at 109.  Pursuant to the statute, "[a] court with which a petition is filed . . . shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the [FPAA] relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item."  26 U.S.C. § 6226(f).  Under the statute, the court's jurisdiction only extends to "partnership items" addressed in a FPAA.  *See Petaluma*, 591 F.3d at 654–55.

"A partnership item is an item that is (1) required to be taken into account under any provision of subtitle A, governing income taxes, and (2) identified by the Secretary in the regulations as 'more appropriately determined at the partnership level.'"  *Tigers Eye Trading LLC v. Comm'r*, 138 T.C. 67, 98 (2012) (quoting 26 U.S.C. 6231(a)(3)).  Partnership items include, among other things, "the partnership aggregate and each partner's share of . . . items of income, gain, loss, deduction, or credit of the partnership."  26 C.F.R. § 301.6501(b)(1)(i)-(vi). Other items, affected by partnership level determinations, but properly handled at the partner level, are merely "affected items," which are not properly determined in a FPAA.  *See* 26 U.S.C. § 6231(a)(5) ("The term 'affected item' means any item to the extent such item is affected by a partnership item.").

### 2.  The FPAAs Improperly Adjusted the Partners' Outside Bases

Plaintiffs argue that, under TEFRA, an FPAA cannot properly adjust a partner's outside basis because outside basis is not a partnership item. Pls.' Br. 10.  Defendant concedes that the partners' outside bases are not partnership items and that the FPAAs are "erroneous to the extent that they purport to" directly adjust the partners' outside bases.  Def.'s Br. 14.  This view was recently affirmed by the United States Supreme Court's decision in *United States v. Woods*

which places the conclusion that the plaintiffs' outside bases could not be conclusively determined in the FPAAs beyond doubt. *United States v. Woods*, 134 S. Ct. 557 (2013). In *Woods*, the Court reviewed a case decided on strikingly similar facts,[11] and observed that "[t]o be sure, the District Court could not make a formal adjustment of any partner's outside basis in this partnership-level proceeding." *Id*. at 565. Nonetheless, the FPAA "was not required to shut its eyes to the legal impossibility of any partner's possessing an outside basis greater than zero in a partnership that, for tax purposes, did not exist." *Id.* In other words, although "each partner's outside basis still must be adjusted at the partner level . . . provisional consideration" of the consequences of partnership level adjustments on the partners' outside bases was not improper. *Id.* Thus, the Department was entitled to "provisionally consider" each partner's outside basis as necessary to make partnership level determinations, but could not formally adjust each partner's outside basis in the FPAAs. Accordingly, plaintiffs' motion for partial summary judgment on its assertion that "the FPAAs cannot adjust the outside basis of Plaintiffs' partners in the partnership" is granted. Pls.' Br. 17.

### 3.   The Netting of the Purchased and Sold Options Is a Partnership Item

The FPAAs contain findings that the "the amount treated as contributed by the partners . . . is reduced by the amounts received by the contributing partners from the contemporaneous sales of the [short] option(s) to the same counter-party. Thus, the basis of the contributed option(s) is reduced, both in the hands of the contributing partners and [the partnership]." AD

---

[11]      In *Woods*, where the plaintiffs engaged in a functionally identical tax avoidance procedure to the one employed here, the IRS found the partnerships that plaintiffs employed to be sham partnerships, and, for the purpose of deciding whether or not plaintiffs would be subject to a "penalty for gross valuation misstatements," provisionally concluded that that the partners' outside bases in the partnerships must be zero. *Woods*, 134 S. Ct. at 562.

2001 FPAA.  In other words, the FPAAs found that the value of the long options to the partnership was reduced by the obligations assumed under the short options.

Plaintiff claims this netting of the options is not a partnership item because "whether the options should be netted *at the partner level* has no possible effect on the items of income, gain, loss, deduction, or credit of the partnerships."  Pls.' Br. 11.  Plaintiffs' insist, therefore, that the "only possible impact [of netting the options] is on the partners' outside bases in the partnerships, which, for the reasons discussed above, is not a partnership item."  Pls.' Br. 11.  In other words, plaintiffs argue that because the netting only affects non-partnership items (i.e., calculating gain or loss on the individual partners' returns), and the FPAAs can only adjust partnership items, the FPAAs were not permitted to net the value of the options.  This matters because, if the FPAAs were not permitted to do so, they would lack evidence that the partnerships are shams.

The government counters that

[w]hile a determination that the value of the option spreads is properly calculated as the net of the premium paid for the long option and the premium received from the same counterparty for the short option would result in a reduction in the partners' outside basis in a partner-level proceeding, this netting determination is also relevant to a partnership item and therefore properly resolved at the partnership level.  Specifically, because each of the option pairs was contributed to a partnership, this Court must determine whether netting of the premiums paid for the long and received for the short option is appropriate in order to determine, among other thing, each partnership's inside basis in the contributed assets.

Def.'s Br. 16.  In other words, the defendant argues that netting is required to compute the value of each partnership's own inside basis in the options.  Inside basis is "the partnership's basis in its own assets."  *Woods*, 134 S. Ct. at 561 (citation omitted).  Thus, according the defendant, netting is a partnership item because it is required to calculate the value of the contributed assets to the partnership itself.

The court finds that the netting of the options insofar as necessary to calculate the partnership's inside basis is a "partnership item." First, the FPAAs make it clear that the netting of the option premiums is necessary to determine the "basis of the contributed option(s) . . . in the hands of" each of the partnerships. AD 2001 FPAA. The value of the options to the partnership determines the partnership's basis therein, and "[t]he partnership's basis in contributed property is a partnership item." *Murfam Farms, LLC v. United States*, 94 Fed. Cl. 235, 241 (2010).

Second, the characterization of the short option received by the partnership is as a "partnership item" pursuant to 26 C.F.R. § 301.6231(a)(3)-1(c)(2), which defines "[t]he character of the amount received from a partner" and "[t]he basis to the partnership of contributed property (including necessary preliminary determinations, such as the partners' basis in the contributed property)" as "partnership items." 26 C.F.R. § 301.6231(a)(3)-1(c)(2).

Finally, each of these determinations is relevant to the factual issue of whether these partnerships lacked economic substance and were, therefore, sham entities, which is, itself, a partnership item. *Woods*, 134 S. Ct. at 563 ("[A] determination that a partnership lacks economic substance is an adjustment to a partnership item."); *Petaluma*, 531 F.3d at 653 ("[T]he determination that a partnership is a sham and lacks economic substance is a partnership item because it is a legal determination that underlies the amount and characterization of other partnership items." (citations omitted)).

As noted above, the FPAAs could not adjust the outside bases of the individual partners. To the extent that the FPAAs claimed to do so using netting, they exceeded their authority. However, the Department was permitted to determine the inside basis of contributed property and to observe, provisionally, that the calculation of the partnership's inside basis in the option

pairs would be an identical calculation to that subsequently undertaken at the individual partner level to determine that partner's outside basis in the partnership assets.  Accordingly, plaintiff's motion for summary judgment on this issue is denied.

C.  Whether the Short Options Are Liabilities for Tax Purposes

Next, plaintiffs contend that the determinations in the FPAAs to characterize the short options as liabilities are incorrect as a matter of law because, under the rule stated in *Helmer v. Comm'r*, 34 T.C.M. (CCH) 727 (1975), contingent liabilities are not liabilities for purposes of calculating the basis of partnership property, and the liabilities created under the short options were contingent.  In the FPAAs, the IRS relied upon Treasury Regulation § 1.752-6T, which superseded *Helmer* by requiring that contingent liabilities, such as variable payout required under the short options, be treated as liabilities for purposes of computing basis.  Plaintiff argues that this regulation, which was promulgated after the transactions at issue in this case, cannot lawfully be applied to plaintiffs retroactively.  *See* 26 U.S.C. § 7805.

Defendant, on the other hand, argues that the court need not address the retroactivity of Treasury Regulation § 1.752-6T at this juncture, because whether the short options should be treated as a liability for tax purposes presumes that the plaintiff entities were bona fide partnerships.  For defendant, since there will be a trial in this case to determine whether the partnerships were sham entities that should be disregarded entirely for tax purposes, deciding whether the regulation can lawfully be applied retroactively at this stage would be premature. The court agrees.

The plaintiff concedes that issues of fact remain as to whether the partnerships should be disregarded under the sham entity doctrine or similar legal theories.  Were the court to find that the partnerships were to be disregarded on such grounds, deciding whether to treat the short

15

options as liabilities under Treasury Regulation § 1.752-6T would be unnecessary. *See Stobie Creek Invs. LLC v. United States*, 608 F.3d 1366, 1374 n.4 (Fed. Cir. 2010). Accordingly, the court finds that this issue is not ripe for summary adjudication and plaintiffs' motion with respect to this issue is denied.

D.  Whether Reliance on Section 165(c)(2) in the FPAAs Was Invalid

Finally, plaintiff argues that the determination in the FPAAs that plaintiffs did not "enter[] into to the option(s) positions or purchase the foreign currency or stock with a profit motive for purposes of [26 U.S.C.] § 165(c)" was invalid. AD 2001 FPAA. Section 165(c) permits a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise," but "in the case of an individual, the deduction . . . shall be limited to . . . losses [that are] incurred in any transaction entered into for profit." Plaintiff insists that this section is inapplicable because plaintiffs are partnerships, and these limitations only apply in "the case of an individual." Put another way, for plaintiffs the requirement that losses be incurred in connection with transactions entered into for profit before they can be deducted does not apply to juridical entities such as partnerships and corporations.

The defendant responds that section 703(a) of the Internal Revenue Code prescribes that "[t]he taxable income of a partnership shall be computed in the same manner as in the case of an individual." Def.'s Br. 32. Accordingly, defendant argues, courts have treated partnerships as individuals for purposes of the profit motive requirement in section 165. Def.'s Br. 32–33.

The court finds that this issue is also not ripe for summary adjudication. If, following trial, it is found that the plaintiff partnerships were sham entities to be disregarded for tax purposes, the losses created by the liquidation of these entities would not be deductible,

regardless of whether section 165 is applicable to partnerships.  Thus, it would be inappropriate

for the court to determine this issue at this stage.  *See Jade Trading, LLC*, 598 F.3d at 1381.

CONCLUSION

Accordingly, plaintiffs' motion for partial summary judgment is granted in part.  The

parties are directed to confer and file a joint status report within 30 days of service of this

opinion.

It is SO ORDERED.

Dated:          March 31, 2014
                New York, New York


                                        /s   Richard K. Eaton
                                          Richard K. Eaton, Judge